IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FRANCES L. RIDER,

                    Plaintiff,

      v.

MICHAEL ASTRUE,
Commissioner of Social Security,

                 Defendant.

OPINION and ORDER

09-cv-575-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of

Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Frances L. Rider seeks

reversal of the commissioner's decision that she is not disabled and therefore not eligible for

Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C.

§§ 416(I) and 423(d).  Plaintiff contends that the administrative law judge erred in

determining the weight to be given the opinion of plaintiff's treating physician, Dr. Cragg,

ignored plaintiff's obesity, failed to find that her knee condition met or equaled a listed

impairment and improperly assessed her credibility.  Having carefully reviewed the record

and the administrative law judge's decision, I am rejecting plaintiff's arguments and

1

affirming the commissioner's decision.

The following facts are drawn from the administrative record (AR).

FACTS

A.  <u>Background</u>

Plaintiff was born on February 11, 1949.  AR 72.  She has a high school education and attended business college for three months.  AR 840.  She has worked as a cashier, sales clerk and electronic assembler.  AR 19.

Plaintiff filed an application for disability insurance benefits on December 21, 2005, alleging that she had been unable to work since July 1, 2002 because of hearing loss in both ears, low back pain, sleep apnea, a learning disability and depression.  AR 11, 125.  The local disability agency denied plaintiff's application initially and upon reconsideration, so plaintiff requested a hearing, which was held on May 22, 2008 before Administrative Law Judge David K. Gatto.  The administrative law judge heard testimony from plaintiff, AR 840-51, and a neutral vocational expert, AR 851-53.  On December 10, 2008, the administrative law judge issued his decision, finding plaintiff not disabled through December 1, 2006, her last insured date.  AR 11-20.  This decision became the final decision of the commissioner on August 13, 2009, when the Appeals Council denied plaintiff's request for review.  AR 2-5.

B. <u>Medical Evidence</u>

1. <u>Knee impairment</u>

a. <u>Before December 1, 2006, plaintiff's last insured date</u>

In January 2001, plaintiff saw her family physician, Dr. Stephen C. Fuller, after she injured her knee in a fall. Fuller diagnosed a contusion on plaintiff's right medial femur and tibia. He placed her knee in a brace and prescribed Percocet as needed. AR 656. Fuller continued to treat plaintiff's knee through February. At that time plaintiff weighed 203 pounds. AR 652-55. On March 9, 2001, Fuller referred plaintiff to an orthopedic surgeon. AR 651. On March 30, 2001, Fuller noted that plaintiff had a possible flare up of osteoarthritis in her right knee. AR 650.

On July 10, 2001, plaintiff saw orthopedic surgeon David C. Ritzow, who diagnosed "right knee chronic quadriceps tendon tear." He recommended surgical repair, which he performed on August 10, 2001. AR 588, 821-22. After the surgery, plaintiff's knee improved and she participated in physical therapy. AR 816-19. On March 28, 2002, Dr. Fuller saw plaintiff and noted that her knee was doing quite well but that she might be suffering from some posttraumatic arthritis. AR 640.

On July 20, 2006, plaintiff saw Dr. John A. Cragg, an orthopedic specialist, for knee pain. Cragg noted that plaintiff's May 9, 2006 x-rays had shown calcification on the superior aspect of the patella and stage 3 patellofemoral osteoarthritis in the right knee and

3

stage 2 medial narrowing and stage 1 patellofemoral disease in the left knee.   On examination, he noted that plaintiff had no instability in her right knee and full range of motion in her left knee.   Cragg diagnosed Stage 3 degenerative arthritis in the right knee, mild degenerative arthritis in the left knee and morbid obesity (210 pounds).   Cragg indicated that plaintiff would need a right knee replacement in the future.   Also, he noted that plaintiff was intolerant of non-steroidal medications and took over-the-counter medications.   AR 224-25.   Plaintiff had physical therapy from August 30, 2006 through September 27, 2006.   AR 331.

b.   <u>After last insured date</u>

On March 31, 2007, plaintiff returned to see Dr. Cragg, complaining of right knee pain.   Cragg noted that her health was complicated by obesity, hypertension and depression. Cragg gave plaintiff an injection in her finger to alleviate the numbness that she reported. He diagnosed positive right knee degenerative arthritis.   AR 222-23.   On August 9, 2007, plaintiff received an injection of pain medication in her right knee.   AR 228.

On September 11, 2007, Dr. Cragg completed a functional capacity assessment of plaintiff.   He diagnosed knee degenerative arthritis, status post quadriceps tendon repair and obesity.   Cragg indicated that plaintiff could occasionally lift 10 pounds and less than 10 pounds, could sit one hour and walk or stand one hour in an eight-hour day, would require

4

unscheduled breaks and would miss more than two days a month of work.  Also, he indicated that plaintiff's pain would interfere with her ability to concentrate doing work and that she should avoid kneeling, squatting and stair climbing.  AR 219.

2.  Other impairments

On August 23, 2002, Dr. Fuller diagnosed left shoulder rotator cuff tendinitis and subacromial bursitis.  AR 732.  On September 19, 2006, Dr. Mark Roberts treated plaintiff for left shoulder pain.  AR 309.  On December 12, 2006, plaintiff returned to Roberts, complaining of right arm and shoulder pain.  Roberts prescribed Ibuprofen.  AR 315.

On February 10, 2004, plaintiff had a computed tomography scan of her abdomen because she was having abdominal pain.  The scan showed normal abdomen and pelvis but severe facet joint degenerative disease at L5-S1.  AR 578.

On December 14, 2004, plaintiff saw Dr. Fuller, complaining of vertigo.  He suggested vestibular exercises for her.  AR 705.

On February 14, 2005, plaintiff saw Dr. Thomas G. Gerber for hearing loss.  He diagnosed bilateral combined hearing loss secondary to congenital atresia and canal stenosis, post stapedectomy.  Her hearing was stable with slight deterioration of hearing on the left.  AR 494-97.  The audiologist recommended that plaintiff continue with her current hearing aids and consider replacing the right hearing aid in the near future.  AR 499.

5

_____On September 13, 2006, plaintiff returned to see Dr. Gerber.  She had only a slight change in her hearing.  AR 242.  On September 14, 2006, Dr. Gerber completed a residual functional capacity questionnaire for plaintiff.  He indicated that, because of plaintiff's hearing loss, she should avoid all exposure to noise.  He wrote that plaintiff's severe hearing loss would affect her ability to communicate and to hear instructions, machinery and possibly alarm systems.  AR 395-98.

_____On October 20, 2005, plaintiff saw Dr. Mark Lay, complaining of swollen feet.  She reported that she had recently completed an 18-hour car ride to South Carolina.  He diagnosed peripheral edema probably from inactivity.  AR 483.

On September 21, 2006, plaintiff saw Dr Mark Roberts for sleep apnea for the first time.  She told him she had been doing well since her annual physical exam in May 2005.  Her depression was quiescent and she wanted to decrease her Lexapro.  He noted sleep apnea, hearing loss and diffuse osteoarthritis.  He did not note any knee pain.  AR 405-06.

Also on September 21, 2006, plaintiff saw Dr. Sharat Ahluwalia on referral by Dr. Roberts.  Dr. Ahluwalia found plaintiff morbidly obese at 214 pounds and that she had back and knee pain.  AR 361-62.  A December 1, 2002, test had shown that plaintiff had severe obstructive sleep apnea.  AR 606.

C.  Consulting Physicians

6

On April 15, 2005, state agency physician Pat Chan completed a physical residual functional capacity assessment for plaintiff, listing diagnoses of hearing loss and lumbar degenerative joint disease.  AR 541. Chan found that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day.  AR 542-48.

On May 9, 2006, plaintiff had a consultative examination by Dr. Eric Carlsen at the request of the state agency.  Although plaintiff reported back pain, she denied having any medical treatment for her back pain or taking any over-the-counter medications for this pain.  She told Carlsen she was the primary care giver for her husband, who had cancer.  She reported chronic right knee pain.  On examination, Carlsen noted that plaintiff had some mild pain and limitations in motion in her right knee and mechanical low back pain without any obvious radicular features.  She had full strength throughout her lower extremities, her gait was without limits, she was able to toe and heel walk and she had no obvious difficulties in performing fine finger manipulation.  AR 474.  He concluded that plaintiff might have difficulty doing jobs that require squatting, kneeling or prolonged standing or walking.  Also, he noted that plaintiff had some mild hearing deficits.  AR 475.

On May 24, 2006, state agency physician M. J. Baumblatt completed a physical residual functional capacity assessment for plaintiff, listing diagnoses of low back pain, knee pain and sleep apnea.  AR 464. Baumblatt found that plaintiff could lift 20 pounds

occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day with occasional kneeling, crouching and crawling. AR 465-70.

On January 30, 2007, state agency physician Dar S. Muceno completed a physical residual functional capacity assessment for plaintiff, listing diagnoses of osteoarthritis and allied disorders and decreased hearing. AR 266. Muceno found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day with occasional kneeling, crouching and crawling. Also, he concluded that plaintiff's hearing limited her to being unable to work where the ability to avoid hazards is dependent on the ability to hear and to determine where sound is coming from and to hear far or distant speech. He said that plaintiff should avoid even moderate exposure to hazards, including machinery and heights. Muceno noted that his opinion differed from Dr. Gerber's opinion that plaintiff needed to avoid all exposure to noise, saying that the objective findings did not support Gerber's opinion. AR 266-72.

### D. Hearing Testimony

Plaintiff testified that she had worked as an assembler until she was laid off in 2001 because of the downsizing of her employer; she looked for other work without success.

8

Plaintiff testified that she reminded her disabled husband to take his medicines twice a day and drove him once or twice a month to the Veterans Hospital in Minneapolis. She testified that they lived with their son and daughter-in-law, who did most of the housework. Plaintiff helped wash dishes, cook and wash clothes. AR 841.

Plaintiff testified that she had right knee and lower back pain and that the back pain radiated to her right leg. AR 842. She testified that she could walk a block on an even surface, AR 843, could stand for about 20 minutes, sit for about an hour, AR 844 and lift 10 pounds on a regular basis, AR 845. Plaintiff testified that her right leg often went out from under her because of the pain, AR 846, and her doctor recommended a right knee replacement but she had not pursued it because she lacked insurance.

Plaintiff testified that she was born "deaf" and had lost more of her hearing. She testified that she wore hearing aids in both ears and could hear at a distance of about two feet. AR 847. Also, plaintiff testified that she had sleep apnea and that it affected her concentration and her ability to drive. AR 849. Plaintiff testified that she experienced no side effects from her medications. AR 842.

The administrative law judge called Mitchell Norman to testify as a neutral vocational expert. AR 851. The administrative law judge asked the expert to assume an individual of plaintiff's age, education and work experience who retained the residual functional capacity to perform light work with frequent climbing of stairs, ramps and ladders, occasional

9

kneeling, crouching or crawling, no climbing of ropes or scaffolds because of her obesity, no exposure to unprotected heights or unprotected dangerous machinery, no work requiring response to verbal or auditory cues and the ability to wear hearing protection in a noisy environment. He asked the expert whether such an individual could perform plaintiff's past work. The expert testified that the individual could perform plaintiff's past works as cashier, sales clerk and assembler. AR 852. Then the administrative law judge asked the expert whether the same individual who was limited to sedentary work could perform plaintiff's past work. The expert testified that the individual could perform plaintiff's past work as an electronic assembler. AR 853.

Next, the administrative law judge asked the expert to assume that the individual was limited to lifting 10 pounds either occasionally or frequently, standing, walking and sitting limited to one hour in an eight-hour workday with unscheduled breaks and more than two absences a month. The expert testified that such an individual would not be competitively employable. Plaintiff's counsel asked the expert whether the same individual would be competitively employable if she had pain that would interfere with the ability to concentrate. The expert responded that the individual would not be employable. AR 853.

E.  Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. §§ 404.1520, 416.920. At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since July 1, 2002, her alleged onset date, through December 1, 2006, her date last insured.  At step two, he found that plaintiff had severe impairments of mechanical low back pain; congenital hearing loss, status post surgical reconstruction; osteoarthritis of the knees, status post right quadriceps repair; bursitis of the shoulders, benign vertigo; and obesity.  AR 13.  At step three, the administrative law judge found that plaintiff did not have a  impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  He stated that the evidence was insufficient to support the severity of a listed musculoskeletal, neurologic, respiratory or special sense impairment.  AR 15.

The administrative law judge found that plaintiff retained the residual functional capacity to perform light work with occasional kneeling, crouching and crawling; no climbing of ropes and scaffolds, work at unprotected heights or near dangerous machinery or work that required responding to auditory cues; and the need to wear hearing protection in high noise environments.  AR 15.  In making his residual functional capacity assessment, the administrative law judge found that plaintiff's testimony was not credible to the extent it was

11

inconsistent with his assessment.  AR 15.  The administrative law judge also considered all medical opinions.  He did not place great weight on Dr. Cragg's opinion because the doctor's treatment notes did not support the work restrictions. He indicated that the medical evidence showed that, after plaintiff's August 10, 2001 right quadriceps tendon repair, she had improved movement of her knee and that, in March 2002, her right knee was doing quite well.  Also, the administrative law judge noted that the treatment notes indicated that plaintiff was quite obese.  He noted, that, in July 2006, plaintiff's right knee had no instability and she had full range of motion in her left knee.  AR 16-19.

Also, the administrative law judge found that plaintiff's overall functioning was inconsistent with a finding of disability.  He noted plaintiff was independent in personal care and a wide range of household chores that she shared with her live-in daughter-in law and was the primary support for her ill husband, giving him rides to his appointments and reminding him to take his medications.  Also, he considered that in 2005, plaintiff had taken an 18-hour drive across country and that in 2006 she reported that she enjoyed watching her grandchildren.  AR 19.

At step four, the administrative law judge found that plaintiff was not disabled because she was able to perform her past work as a cashier, sales clerk and electronic assembler.  AR 19-20.

12

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

13

B. <u>Treating Physician's Opinion</u>

Plaintiff contends that the administrative law judge failed to properly consider the opinion of her treating physician, Dr. Cragg, that plaintiff could occasionally lift ten pounds and less than 10 pounds, could sit one hour and walk or stand one hour in an eight hour day, would require unscheduled breaks, would miss more than two days of work each month, would be limited in work requiring concentration and should avoid kneeling, squatting and stair climbing.

Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions. <u>Haynes v. Barnhart</u>, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." <u>Hofslien v. Barnhart</u>, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion. <u>Id.</u>; 20 C.F.R. § 404.1527(d)(2).   When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. <u>Id.</u> These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other

14

factors.   20 C.F.R. § 404.1527(d)(2).   An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id., and must base his decision on substantial evidence and not mere speculation.   White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

The administrative law judge stated that he did not place great weight on the opinion of Dr. Cragg because the doctor's findings did not support such significant work restrictions. AR 19.   Although, as plaintiff points out, the administrative law judge did not list these findings, Dr. Cragg's treatment notes support the judge's conclusion.   Nowhere in the notes does Cragg indicate a condition requiring the significant restrictions that he found.   He noted that although x-rays showed arthritis in plaintiff's right knee, mild degenerative arthritis in her left knee and obesity, plaintiff had no instability in the right knee and full range of motion in her left knee.   These findings do not suggest that plaintiff would need unscheduled breaks, would miss more than two days a month or could only sit, stand or walk one hour in an eight-hour work day with only occasional lifting of up to ten pounds.

Furthermore, the opinions in the record do not support a conclusion that plaintiff was unable to perform light work with occasional kneeling, crouching and crawling, no climbing of ropes an scaffolds work at unprotected heights or near dangerous machinery.   In 2002, Dr. Fuller had noted that plaintiff's knee was doing well.   In 2006 a state agency physician found that plaintiff could perform light work with occasional kneeling, crouching and

15

crawling.  In 2006, Dr. Eric Carlsen, who examined plaintiff for the state agency, found that plaintiff might have "difficulty" doing jobs requiring squatting, kneeling or prolonged standing or walking.  In 2007, a state agency physician found plaintiff could perform light work with occasional kneeling, crouching and crawling.  Also, plaintiff's reported an 18-hour car ride to South Carolina to Dr. Lay, suggesting that she could sit for more than one hour at a time.

In sum, the administrative law judge gave good reasons for not giving weight to Dr. Cragg's opinion.  Further, there is substantial evidence in the record that contradicted Cragg's opinion.


C.  Obesity

Plaintiff contends that the administrative law judge failed to account for plaintiff's obesity, as required by Social Security Ruling 02-1p:  Policy Interpretation Ruling Titles II and XVI:  Evaluation of Obesity, 67 Fed. Reg. 57859 (2002).  In this case, the administrative law judge found that plaintiff was severely impaired by obesity but did not make any specific finding as to how it affected her residual functional capacity.  However, "a failure to explicitly consider the effects of obesity may be harmless error."  Prochaska v. Barnhart, 454 F. 3d 731. 736 (7th Cir. 2004).  In Prochaska, the court of appeals found that because the administrative law judge's decision was predicated upon the opinions of

16

physicians who discussed the plaintiff's weight, and because plaintiff had not pointed to any evidence suggesting that her obesity significantly aggravated her physical impairments or contributed to her physical limitations, the administrative law judge's failure to comply with SSR 02-1p was harmless.  Id.   The court reached the same conclusion in Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004), explaining:

> Any remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case.  See Keys v. Barnhart, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error review to ALJ's determination).  Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult to stand and walk.   Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity.  Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctor's opinions.

As in Skarbek and Prochaska, no harm resulted from the administrative law judge's failure to address plaintiff's obesity explicitly in his residual functional capacity assessment.  It is clear from the decision that the administrative law judge was aware of plaintiff's obesity, insofar as he found it to be a severe impairment.  Although plaintiff generally asserts that her obesity aggravates her other impairments, she cites no evidence to support this contention and does not otherwise suggests that it limits her activities.  In addition, as the commissioner points out, plaintiff weighed 203 pounds 18 months before her onset date and her weight did not increase much after that.  Until her onset date her obesity did not affect her ability to perform her past work.  For these reasons, it would be pointless to remand this case for

17

explicit consideration of plaintiff's obesity.  <u>Gentle v. Barnhart</u>, 430 F.3d 865, 868 (7th Cir.

2005) ("Once [obesity's] causal efficacy is determined, it drops out of the picture.").


### D.  <u>Listed Impairment</u>

Plaintiff contends that the administrative law judge erred in finding that her knee

impairment did not meet the listed impairment, 1.02(A), Major dysfunction of a joint(s).

To meet this listing, an individual must have a gross anatomical deformity, chronic joint pain

and stiffness with signs of limitation of motion or other abnormal motion of the joint(s),

objective findings of joint space narrowing, bony destruction or ankylosis of the affected

joints and the involvement of one major peripheral weight-bearing joint, resulting in inability

to ambulate effectively.   20 C.F.R., Pt.404, Subpt. P, App.1, 1.02 (A).   To ambulate

effectively, an individual must be capable of sustaining a reasonable walking pace over a

sufficient distance to be able to carry out activities of daily living.  Examples of ineffective

ambulation include the inability to walk without the use of a walker, two crutches, or two

canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the

inability to use standard public transportation, the inability to carry out routine ambulatory

activities, such as shopping and banking, and the inability to climb a few steps at a

reasonable pace with the use of a single handrail.  <u>Id</u> at1.00(b)(2)(b).

Although the administrative law judge did not mention this specific listing, he did

state that he found insufficient evidence to support the severity of a listed musculoskeletal impairment. AR 15. In his decision, the administrative law judge reviewed both the medical evidence and plaintiff's testimony concerning her knees. As the record shows, after plaintiff's 2001 right quadriceps tendon repair, she had improved movement of her knee and, in March 2002, her right knee was doing well. The administrative law judge noted that the treatment notes indicated that plaintiff was quite obese, but he noted, that plaintiff's right knee had no instability in July 2006, and she had full range of motion in her left knee. AR 16-19. This evidence supports the administrative law judge's conclusion that plaintiff's knee impairments did not meet or equal the severity of the listing, 1.01(A).

Plaintiff argues that the administrative law judge failed to consider her ambulation difficulties. She points to her testimony that she had to climb stairs one at a time holding on to a railing, had difficulty walking on uneven surfaces and that her right leg went out from under her because of her pain. However, the administrative law judge found this testimony to be not credible as discussed below.

Even though the administrative law judge did not specifically mention the listings he considered, plaintiff has not pointed out any substantial evidence that the administrative law judge failed to consider that would show that she meets or medically equals a listing. Rice v. Barnhart, 384 F.3d 363, 369 (7th Cir. 2004)(in itself, administrative law judge's failure to refer explicitly to listing does not necessitate remand); Accordingly, remanding this case

19

for a more thorough step three analysis would be a pointless exercise.  C.f. Scheck v. Barnhart, 357 F.3d 697, 700-01(7th Cir. 2004)(remand for more detailed examination of medical evidence not required where plaintiff did not present substantial evidence to contradict agency's position on issue of medical equivalency).

## E.  Credibility

Plaintiff challenges the administrative law judge's determination that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment" could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck, 357 F.3d at 702.  When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to

20

determine credibility.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

An administrative law judge's credibility determination is given special deference because the administrative law judge is in the best position to see and hear the witness and to determine credibility.  Shramek v. Apfel, 226 F.3d 809, 812 (7th Cir. 2000).  In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong."  Prochaska, 454 F.3d at738; Sims v. Barnhart, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying.").  However, the administrative law judge still must build an accurate and logical bridge between the evidence and the result.  Shramek, 226 F.3d at 811.  The court will affirm a credibility determination as long as the administrative law judge gives specific reasons that are supported by the record.  Skarbeck, 390 F. 3d at 505.

21

Plaintiff contends that the administrative law judge erred in his credibility analysis. First, she argues that the administrative law judge did not refer specifically to plaintiff's testimony.  However, the record shows that, in making his credibility assessment, the administrative law judge gave consideration to plaintiff's testimony that she had significant low back pain that radiated down the right leg and resulted in imbalance and that she had significant right knee problems.  AR 15.  He found that these statements were not credible to the extent that they were inconsistent with his residual functional capacity assessment.

Second, plaintiff argues that the administrative law judge erred in finding that her overall functioning was inconsistent with a finding of disability.  She argues that her activities of doing household chores with her daughter-in-law, reminding her husband to take his medication and driving him to appointments did not prove she was able to work.  As the commissioner points out, the administrative law judge did not consider these activities proof that she was able to work but rather as an indication that her testimony concerning her limited functioning was not credible.

Finally, plaintiff argues that the administrative law judge failed to consider some evidence that would support the credibility of plaintiff's testimony.  She argues that she participated in physical therapy and had steroid injections for her pain, which suggests that her pain was significant; her doctor had suggested that she have a right knee replacement in July 2006; and a February 10, 2004 scan showed that she had severe facet joint degenerative

22

disease bilaterally at L5-S1.  The administrative law judge mentioned in his decision that plaintiff had had physical therapy and that her doctor had recommended a right knee replacement, but the record does not show that plaintiff had had any steroid injections in her knee before her last insured date.  Although the administrative law judge did not mention the 2004 scan that showed plaintiff's degenerative disc disease, he did consider the results of Dr. Carlsen's 2006 consultative examination, which indicated that plaintiff had low back pain without any obvious radicular features, and plaintiff's statements to Dr. Carlsen that she had had no treatment for her back pain.  The administrative law judge found that plaintiff's back pain was not well substantiated by objective findings.  AR 19. This statement indicates that the administrative law judge considered plaintiff's back pain and the findings on examination in reaching his conclusion that plaintiff's testimony concerning her back was not fully credible.

Plaintiff has not demonstrated that this is one of those rare occasions in which the court should disturb the administrative law judge's credibility finding.  He built an accurate and logical bridge between the evidence and his conclusion that plaintiff's statements considering her limitations were not fully credible.  It is plain from the decision that the administrative law judge properly considered plaintiff's course of treatment, the medical evidence and her activities  in arriving at his credibility determination.  I am satisfied that his determination was not patently wrong.

23

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security is AFFIRMED and plaintiff Francis L. Rider's appeal is DISMISSED.  The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 7th day of May, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

24